GERMAIN *v.* UNION SCHOOL DISTRICT OF CITY OF STANTON.

1. CONTRACTS—CONDITIONS PRECEDENT—RIGHT OF ACTION.

   While a contractor who fails to construct a school building according to specifications may not recover without furnishing the final estimate of the architects as agreed on, the discharge of such architects by the school district excuses a compliance with the condition under the terms of an agreement specifying that in such case the owner should act in the place of such architects.

2. SAME—COMPROMISE—OFFERS OF ADJUSTMENT.

   A written offer to compromise the cause of action is inadmissible in evidence.

3. DAMAGES—QUANTUM MERUIT.

   In an action on the *quantum meruit* for the construction of a schoolhouse which, when constructed, did not comply with the contract between the parties, the measure of damage is the reasonable value of the building, of which the defendant took possession, not exceeding the contract price and the value of the extras, less the reasonable cost of completing the building according to contract.

ON APPLICATION FOR REHEARING.

SAME—STIPULATED DAMAGES—PENALTY—EXCUSE.

   Under a clause in a contract providing for a forfeit of ten dollars a day after a certain date, if the building remained uncompleted, except in the event of strikes or inclement weather, the defendant is entitled to recoup the stipulated sum to the time it took possession, as claimed, unless the jury should find the delay was excused within the terms of the contract; and the delay could not be excused by showing that the defendant's architects failed to condemn defective glass in time to permit plaintiff to replace it.

Error to Montcalm; Mayne, J., presiding. Submitted June 15, 1909. (Docket No. 101.) Decided September 21, 1909.

Assumpsit by George F. Germain against the Union

School District of the city of Stanton upon a building contract. A judgment for plaintiff is reviewed by defendant on writ of error. Reversed.

*F. A. Miller* and *R. A. Hawley*, for appellant.

*John J. Zimmer*, for appellee.

On September 26, 1905, plaintiff entered into a written contract with defendant to erect a large school building for the sum of $15,820. The building, by the terms of the contract, was to have been completed on or before August 1, 1906, provided that,

"In case any delay shall arise from * * * any strike in building trade or other cause clearly beyond control of the said party of the first part, * * * the penalty hereinafter provided for and to be incurred for not finishing said building on or before the first day of August, 1906, shall not be forfeited or become payable by the said party of the first part."

Many disputes arose between the plaintiff and the defendant or its architects, White & Hussey. The glass was condemned by the architect, was replaced, and was again in part condemned. A very large number of defects was pointed out by the architects after the plaintiff claimed to have fulfilled his contract, and he was ordered to remedy them. This he never fully did.

On August 3, 1906, the architects inspected the school building, and reported that it was not ready for acceptance, and so notified plaintiff by letter of that date. On August 24th the architects served upon the plaintiff a notice from the school board to complete the job within 10 days. On September 4th, the building not having been completed by the plaintiff, the school board took possession of it and proceeded to complete it. On September 10th the architects wrote a letter to the plaintiff granting him an extension of time of 11 days from that date.

On the same day the plaintiff went to Stanton and found the school board in possession, which it refused to surrender to plaintiff.

On September 13th the board discharged White & Hussey as architects, and upon the same day plaintiff brought suit in chancery against defendant, praying for an injunction against defendant, restraining it from interfering with him in the completion of said building.   An answer and cross-bill was filed by defendant, and upon consideration thereof, together with affidavits thereto attached, the court found that the defendant—

"Was in possession of the school building, constructed by complainant, for the purpose of completing amendments thereto, according to the judgment of the architects, after the default of the complainant in making such amendments, and was rightfully in possession under the terms of its contract."

The complainant's prayer for injunction was denied. The school board thereupon proceeded to complete the building in some respects at a cost of $777.29, but still claim that the building is in many respects faulty, and not up to the contract and specifications.   After negotiations for an adjustment had failed, plaintiff brought this suit against the defendant, which resulted in a verdict and judgment in his favor for $3,004.17.   Defendant brings the case to this court by writ of error.

BROOKE, J. (*after stating the facts*).   There are a great many assignments of error, only a few of which will be considered.   It is claimed by defendant that no testimony on the part of the plaintiff should have been received, because of the fact that the plaintiff never received his final estimate from the architects or the school board, and neither alleged nor proved that the same was fraudulently withheld from him.   In support of this position defendant cites *Hanley* v. *Walker*, 79 Mich. 607 (45 N. W. 57, 8 L. R. A. 207), and other cases.   We are of the opinion that all the cases cited upon this proposition are clearly distinguishable from the case at bar.

As already pointed out, the defendant discharged the architects on September 13, 1906, several months before

the plaintiff instituted this suit.   It is obvious that thereafter the plaintiff was under no obligation to demand his final estimate from them, and, had it been demanded, the architects could not have furnished it.   During the time elapsing between the discharge of the architects and the commencement of suit, many demands were made by the plaintiff upon the defendant for payment of the balance he claimed to be due which were by the defendant refused. The contract provided that, in case the architects were discharged, the school board itself should act in the place and stead of the architects.   Under these circumstances, we hold that the plaintiff's failure to produce the architects' final estimate or explain its absence was of no consequence.   The controversy was upon its face squarely between plaintiff and defendant at the time suit was brought; the defendant at that time being clothed with all the rights and duties of the architects.   Testimony was properly admitted.

Error is assigned upon the admission of Exhibit No. 24, which was an offer on the part of the defendant to pay to plaintiff $750 in settlement of his claim.   The exhibit was admitted over the specific objection on the part of the defendant that it contained an offer of compromise and was for that reason incompetent.   The court remarked that the offer made in the exhibit was not binding on the defendant, but failed to state that it was not an admission of liability.   It should have been excluded.   *Montgomery* v. *Allen*, 84 Mich. 656 (48 N. W. 153).

Error is assigned upon that portion of the charge of the court covering the measure of damages, which was in part as follows:

"The plaintiff claims $3,056.   If you find that he has failed to live up to the terms of the contract, that the building which he has furnished is not such a building as was contracted for, then you will deduct from this claim of the plaintiff such sum as will make it such a building as he contracted to furnish *in value.*   In other words, you will require him to do those things which he ought to have done under the terms of the contract.   Not having

done the same, you will require him to pay the board for doing those things which he ought to have done, and which they had to do in order to complete the building, and also such sum as will make the building as good as it would have been under the terms of the contract had it been complied with."

The vice of this instruction is that it assumes that all the plaintiff was bound to do was to furnish a building worth the contract price, whereas he was bound to furnish a building according to the plans and specifications, even though it were worth many hundreds of dollars more than the contract price. Where a contract is non-apportionable, as this one is, and the plaintiff does not complete, as this plaintiff did not, his recovery must be upon the *quantum meruit*. His measure of damages would be the reasonable value of the building as defendant took possession of it, not exceeding the contract price and the value of the extras, less what it would reasonably cost to complete it and make it comply with the contract and specifications. *Eaton* v. *Gladwell*, 121 Mich. 444 (80 N. W. 292), and cases cited.

Many other errors are assigned, but they are not discussed, as they are not likely to arise upon another trial.

Judgment reversed, and a new trial ordered.

BLAIR, C. J., and GRANT, MONTGOMERY, and Mc-ALVAY, JJ., concurred.

### ON MOTION FOR REHEARING.

BROOKE, J. On an application for rehearing, our attention is called to the fact, that, in the opinion herein, *ante*, 214 (122 N. W. 524), no mention is made of the claim of defendant to stipulated damages, by reason of the failure of plaintiff to perform his contract within the time limited by the contract.

Section 25 of the contract is as follows:

"It is further agreed by and between the parties hereto, that in case the said building shall not be completed and the said building not finished on or before the first day of August, A. D. 1906, according to the terms and condi-

tions of these articles of agreement, and the said plans, specifications and drawings, then the said party of the first part shall pay to the said party of the second part, and forfeit out of the moneys which shall otherwise be due to him by virtue of this agreement, as and for liquidated and ascertained damages for such default, and not as a penalty, the sum of ten dollars per day for each and every day thereafter that the said work remains incomplete and unfinished, provided only that if such delay is caused by any strike among the workmen or other causes, equally beyond the control of said first party, then such forfeiture is not to be given, and provided also that in case the said party of the first part shall be prevented by any strike among the workmen from complying with this agreement, the said White & Hussey may extend the time for the completion of the work for such reasonable period as they may think proper, under the circumstances and certify in writing to be necessary.   And provided also that if the said party of the first part shall be required to suspend work on account of frost or inclement weather, upon receiving a notice in writing to that effect from the architects, the time during which the work shall be so suspended shall be deemed an event beyond the control of the said party of the first part."

Upon this branch of the case, the learned circuit judge charged the jury as follows:

"It is undisputed that the defendant went into possession of the building September 4th, and claims damages of ten dollars per day between August 1st and September 4th.   Is that the extent to which you claim?

" *Mr. Hawley:* Yes.

" *The Court:* I charge you, gentlemen, after August 15th, the plaintiff would have a reasonable time in which to get the glass and the sash as required by the architect. On July 27th, he notified the architect, and the defendant in this case relied in part upon the order of the architect to the plaintiff to proceed to make these repairs or make these changes as provided by the contract, and after August 15th the plaintiff would have a reasonable time in which to get the glass; this will practically do away with the claims for liquidated damages, because he could not proceed to get it as he made his demand on July 27th, and was not notified of it until August 15th, after which he would have a reasonable time.   It is for you, however, to

say just what a reasonable time would be, if from August 15th to September 4th, is more than a reasonable time for him to get these things, then the claim of the defendant for ten dollars a day for such time as the building could not be occupied by them would be good. Had the architect during the month of July ordered these changes another question would have been presented. The plaintiff was not responsible for the neglect of the architect to order the required changes, and consequently he cannot be held liable in damages for the same."

The defendant claimed the sum of $280.00 for 28 secular days' delay, from August 1st to September 4th. The provision of the contract was a valid one. *Whiting v. Village of New Baltimore*, 127 Mich. 66 (86 N. W. 403); *Lamson v. City of Marshall*, 133 Mich. 250 (95 N. W. 78); *Wilson v. Godkin*, 136 Mich. 106 (98 N. W. 985).

The jury should have been instructed that this sum was properly chargeable against plaintiff, unless they found the delay to have been the result of one or other of the causes enumerated in section 25 of the contract, as proper excuse for delay.

It was plaintiff's claim that defective glass was not seasonably inspected and condemned by the architects. This claim is not tenable. It was his duty to furnish glass according to the contract, and he cannot excuse his delay in doing so by showing that defendant's architects failed to condemn it in time to permit him to replace it within the time limited by his contract.

BLAIR, C. J., and GRANT, MONTGOMERY, and MC-ALVAY, JJ., concurred.